## Case No. 4,393.

ELLIOTT et al. v. The JAMES NELSON.

[1 Pittsb. Rep. 6; 1 Pittsb. Leg. J. 5.]

District Court, W. D. Pennsylvania. 1853.

IRWIN, District Judge. The decision of the question arising out of the petition, answer and evidence, may, it is supposed, in argument, establish a precedent as to what kind of a signal, and the time of its continuance, will be required by coal boats in navigating the Ohio river, to sustain or resist a claim for damages in cases of collision. But unless something material is omitted which the law requires to be done, it will rarely happen from a difference of facts that a rule applicable to one case can safely be applied to another; so that a decision resting upon particular facts in evidence can only be a precedent in cases where the facts are precisely similar.

The Nelson and the suffering boats were descending the river Ohio about midnight of the 10th of November, last, both occupying the middle of the channel; the night being dark and rainy, the water about twelve feet in depth, and the speed of the Nelson about ten miles an hour, when the coal boats were run down and totally lost.

It is alleged by the libellants, that this disaster was occasioned by the negligence of the officers of the Nelson, by disregarding the signal light of the boats; by its improper speed in such a night, in the vicinity of a number of coal boats, and by the lookout having left his post a few minutes before the collision took place. To this, it is answered by the respondents, that there was no signal light shown by the coal boats which could have been distinctly seen before or at the time of collision; that the light, called a signal, was in an old and battered lantern, emitting only feeble and fitful rays, and got up suddenly when there was not time to prevent a collision; that the speed of the Nelson

was only such as was usual at night, and that the lookout was only away from his post about a minute, not long enough to interfere with his duty. To enable the libellant to recover, he must not only show some negligence and misconduct on the part of the respondent, but ordinary care and diligence on his own part. The law makes it the duty of the master and owner of every steamboat, whether employed on the sea, or lakes, or rivers, to carry between sunset and sunrise one or more signal lights, that may be seen by other boats navigating the same waters. The Nelson was provided with such a light; and if there was any negligence or misconduct in navigating that boat, it was in disregarding what the libellants call the signal light of the coal boats. This is the material point to be considered; for if that light was insufficient, and not in proper time displayed, it will not be necessary to discuss the charges of negligence and misconduct made by the libellants.

The evidence is, that the signal of the coal boats was a candle, contained in an old and battered lantern, lighted when the steamboat was at a short distance and approaching the coal boats in the same channel, at a speed of ten miles an hour, but time enough (if the libellants are to be credited) to enable the steamer, by changing her course or reversing her engine, to avoid the collision. But some of the respondent's witnesses depose that this light was not seen, and could not be seen until it was too late to prevent the accident; others say that it could not be seen at all until the time of collision, while all concur in saying that it was insufficient, and that, if sufficient, it was exhibited too late for the boat to alter her course or reverse her engine. There is evidence that it has been customary for coal boats to use at night when navigating the Ohio, a candle, enclosed in a tin lantern, as a signal light, but whether occasionally, as steam vessels neared them, or during the whole night, we are not informed; but it is proved that the lights of other coal boats were distinctly seen all the night of the collision. The act of congress [Act July 7, 1838; 5 Stat. 306] which requires steamboats to keep a signal light or lights from sundown to sunrise cannot, by judicial decision, be extended to coal boats, but it serves to show a wise precaution against one cause of collision, which will strongly apply to other crafts navigating the Ohio at night. The same reasons which made this law expedient, strongly apply to coal boats floating on a river with a narrow channel, such as the Ohio, on a dark night. There is then obviously more danger of a coal boat descending that channel without a light, being run down by a steamer also descending and in proximity, than of a collision between two steamers navigating the same channel in proximity, one with and one without such a light.

But the court can do nothing more than adopt the spirit of the act referred to, so far as it may have a bearing upon the question of negligence, by requiring in all cases that a conspicuous signal light shall be exhibited by coal boats navigating the Ohio at night, so long before a collision as not to make the right of action and the award of damages to depend upon a controversy, as in this case, whether such a light was shown one minute, or ten or fifteen minutes, or any such brief time before the collision. Unless such a rule is established to govern future cases of this nature, libels for damages arising from such collisions must always involve conflicting and doubtful testimony, too unsafe for an opinion decisive of important rights. Whether a signal light was exhibited within a period of five or ten minutes before collision; and whether the colliding boats were a mile or a half or a quarter of a mile apart at the time, would generally depend upon the memories of men alarmed and excited by impending peril, and too apt to be influenced by feelings little calculated to elicit the truth, and lead the mind to a just conclusion. It may not be expedient to fix any time during night when it will be incumbent upon coal boats floating in the Ohio to be provided with signal lights, but it will always be required of the owners of them satisfactorily to prove beyond a reasonable doubt or dispute, in cases of alleged collisions, that they have taken precautions to avoid them by the diligence and care indicated. Believing that these precautions were not observed by the libellants in the case before the court, the libel must be dismissed, with costs.